**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**DONALD A. HERRINGTON,**

     Plaintiff,

v.                                               Civil Action No. **3:23CV696**

**CANDACE HAGEN, *et al.*,**

     Defendants.

**MEMORANDUM OPINION**

Donald Herrington, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1]  In his Second Particularized Complaint, Herrington contends that Defendants[2] denied him adequate care during his incarceration at Deerfield Correctional Center ("DCC") by refusing to prescribe him Paxlovid for a COVID-19 infection and then subsequently refusing to test him for COVID-19 or prescribe Paxlovid.  The matter is before the Court on Herrington's Motion for Leave to Amend and Supplement ("Motion to Amend," ECF No. 75), the Second Particularized Complaint (ECF No. 76), Herrington's compliance with the Court's orders, and the Court's screening obligations under 28 U.S.C. §§ 1915(e)(2) and 1915A.  For the reasons

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] In the Second Particularized Complaint, Defendants are: Candace Triplett, a nurse at DCC; Tiffany Powell, a nurse at DCC; Mark Amonette, "Chief MD;" Vital Core Health Strategies; Shannon Ricks, a nurse at DCC; Jesse Rolen, a nurse at DCC; Alvin Harris, a doctor at DCC; and Paul Targonski, "Chief MD."  (ECF No. 76, at 1 (spelling corrected).)

discussed below, the Motion to Amend will be DENIED as unnecessary and the Second Particularized Complaint and the action will be DISMISSED.

## I.    RELEVANT PROCEDURAL HISTORY

Herrington's original Complaint, filed in October of 2023, named Mark Amonette, Candice Hagen, Tiffany Powell, and Unknown VADOC and Vital Core Employees.  (ECF No. 1, at 1.) Defendants Amonette, Hagen, and Powell were served with the Complaint.  (ECF Nos. 8, 35.)  By Memorandum Opinion and Order entered on December 23, 2024, the Court dismissed all claims against Defendants Unknown VADOC and Vital Core Employees without prejudice because Herrington failed to serve them.  (ECF No. 53, at 5.)  Defendant Amonette and Defendants Hagen and Powell filed Motions to Dismiss.  (ECF Nos. 14, 38.)  Subsequently, Herrington filed a Motion for Leave to Amend Pursuant to Fed. R. Civ. P. 15(a)(2) (ECF No. 57), an eighty-three-page Proposed Amended Complaint that added two new Defendants: Shannon Ricks and Paul Targonski (ECF No. 57-1, at 1), and a Motion for the Court to Vacate Ruling Pursuant to Fed. R. Civ. P. 59(e)/60(b) and Serve the New Defendants in Amended Brief ("Motion to Vacate," ECF No. 58).  By Memorandum Order entered on February 19, 2025, the Court explained as follows:

> Herrington's Motion to Amend (ECF No. 57) is also DENIED.  The Proposed Amended Complaint apparently seeks to tack on claims related to other instances of illness or alleged COVID-19 through 2024, when his original complaint alleged conduct from the denial of Paxlovid in 2022.  The Proposed Amended Complaint is eighty-three-pages and is rambling, unorganized, repetitive, and wholly fails to comply with Federal Rule of Civil Procedure 8(a).  That rule provides:

> > **(a) Claim for Relief.**  A pleading that states a claim for relief must contain:
> > **(1)**    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> > **(2)**    a short and plain statement of the claim showing that the pleader is entitled to relief; and
> > **(3)**    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). Plaintiff's submission is neither short nor plain. Rather, it is comprised of a rambling narrative that fails to succinctly present his claims.

In order to state a viable claim under 42 U.S.C. § 1983,[] a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). Courts must liberally construe *pro se* civil rights complaints in order to address constitutional deprivations. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Herrington's current rambling and repetitive allegations also fail to provide each defendant with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court will not parse through a complaint pled in this manner.

Accordingly, Herrington is DIRECTED, within thirty (30) days of the date of entry hereof, to particularize his complaint in conformance with the following directions and in the order set forth below:

a.      At the very top of the particularized pleading, Herrington is directed to place the following caption in all capital letters "PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:23CV696."

b.      The first paragraph of the particularized pleading must contain a list of defendants.

c.      In the second paragraph, Herrington must legibly set forth a short narrative statement of the facts that he believes gives rise to his claims for relief. This means he must provide a description or recount the story of the event or actions that led to him bringing this lawsuit. Herrington must state how each Defendant was personally involved in the events he describes.

d.      In the third paragraph, Herrington must identify each federal or civil right violated. Under each section, Herrington must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. This means Herrington must clearly state why he believes that each Defendant violated his constitutional rights based on the facts he has provided. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion.

e.      Finally, Herrington must include a prayer for relief.

f.      The particularized pleading will supplant the prior complaints and may be no longer than TWENTY (20) pages in length. This means the Particularized Complaint will REPLACE

3

> any earlier complaint, so Herrington must include any claim or allegation that he wants the Court to consider. The particularized pleading must stand or fall of its own accord. This means Herrington may not incorporate by reference statements in the prior complaints.
>
> **FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.** *See* Fed. R. Civ. P. 41(b).

(ECF No. 60, at 2–4.) The Court also warned Herrington that his complaint must comply with joinder requirements. (*Id.* at 4–5.)

On March 24, 2025, Herrington filed a Particularized Complaint (ECF No. 61), a Motion for Leave to Amend (ECF No. 62), and a Motion to Exceed 20 Pages (ECF No. 63). After reviewing the Particularized Complaint, by Memorandum Order entered on April 17, 2025, the Court explained:

> Herrington has failed to comply with the Court's specific directions. While the Court appreciates that Herrington pared down his allegations and facts, the Particularized Complaint exceeds the twenty-page limit. Herrington's Particularized Complaint is once again a rambling account of his complaints related to COVID-19 and other illnesses between 2022 and 2025 and is organized in no discernable order. The manner in which he has pled the facts makes it impossible for the Court to discern specific claims based on the specific conduct of each named Defendant. As in his original complaint, Herrington initially alleges that he contracted COVID-19 in 2022 and desired, but was not administered, Paxlovid. (*Id.* at 1–2.) In March of 2023, well beyond when the receipt of Paxlovid would be of any benefit, Herrington still apparently wanted Paxlovid for long COVID. (*Id.* at 3.) From that point, Herrington's allegations become vague, repetitive, and rambling. Scattered thought his Particularized Complaint are unrelated new allegations from often unidentified periods between 2023 to 2025 about other illnesses he had, the institution's lack of testing for COVID-19 which left him with "no avenue to receive Paxlovid, i.e., the proper treatment for COVID 19," (*id.* at 4), and the fact that he has not received a vaccine (*id.* at 6). Herrington must provide specific dates and identify specific actions of Defendants if he wishes to pursue this action.
>
> Moreover, Herrington next provides "COUNTS" which state the legal theory and once again contain rambling assertions, including new facts not contained in his initial fact section. A review of each "COUNT" shows that there are many different claims for relief under each header, although Herrington fails to clearly identify specific claims. Indicative of the rambling nature of each "COUNT," under each, Herrington states that he "incorporates by reference all

allegations set forth in points 1 to 10 (Supra)," which is his entire fact section, under every "COUNT." This fails to comply with the Court's directive that he must "reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion." Once again, Herrington's current rambling and repetitive allegations fail to provide each Defendant with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

The Court will provide Herrington a final opportunity to file a particularized complaint. Accordingly, Herrington is DIRECTED, within thirty (30) days of the date of entry hereof, to particularize his complaint in conformance with the following directions and in the order set forth below:

a. At the very top of the particularized pleading, Herrington is directed to place the following caption in all capital letters "SECOND PARTICULARIZED COMPLAINT FOR CIVIL ACTION NUMBER 3:23CV696."

b. The first paragraph of the particularized pleading must contain a list of defendants. The Court will not consider any party a defendant unless they are named in this paragraph.

c. In the second paragraph, Herrington must set forth legibly, a short narrative statement of the facts that he believes gives rise to his claims for relief. This means he must provide a description or recount the story of the event or actions that led to him bringing this lawsuit. Herrington must state how each defendant was personally involved in the events he describes. Herrington must provide specific dates and must present his facts in order by date.

d. In the third paragraph, Herrington must identify each federal or civil right violated. The Court will only consider rights specifically identified here. Under each section, Herrington must list each defendant purportedly liable under that legal theory and explain why he believes each defendant is liable to him. This means Herrington must clearly state why he believes that each defendant violated his constitutional rights based on the facts he has provided. For example, if Herrington believes that defendants violated his Eighth Amendment rights for more than one reason, he must clearly label each claim separately (*i.e.*, "Claim One (a)" then, "Claim One (b)") and identify exactly which defendants were involved in that claim. Such explanation should reference the specific numbered factual paragraphs in the body of the particularized complaint that support that assertion. The Court will not parse through this section to find claims that are not clearly identified.

5

e.     Finally, Herrington must include a prayer for relief.[3]

f.     The particularized pleading will supplant the prior complaints and may be no longer than TWENTY (20) pages in length.  This means this Second Particularized Complaint will REPLACE any earlier complaint so Herrington must include any claim or allegation that he wants the Court to consider.  The particularized pleading must stand or fall of its own accord.  This means Herrington may not reference statements in the prior complaints.

**FAILURE TO COMPLY WITH THE FOREGOING DIRECTIONS WILL RESULT IN DISMISSAL OF THE ACTION.**  *See* Fed. R. Civ. P. 41(b).

(ECF No. 66, at 4–7.)  The Court again also reminded Herrington of the requirements of the joinder rules.  (*Id.* at 7.)  Instead of filing a second particularized complaint, as directed, Herrington, *inter alia*, objected to the April 17, 2025 Memorandum Order, questioning the Magistrate Judge's authority and arguing that he had not been afforded the appropriate deference as a *pro se* plaintiff. (ECF No. 67.)  By Memorandum Opinion and Order entered on May 21, 2025, the Court overruled Herrington's objections.  The Court determined that:

> [T]he Court does not find that the Magistrate Judge's Memorandum Order was clearly erroneous for not construing Plaintiff's Particularized Complaint as liberally (or as leniently) as Plaintiff would have liked.  In fact, the Magistrate Judge performed no legal construction of the Particularized Complaint at all.  Rather, he simply held the Particularized Complaint up against the requirements set forth by this Court, particularly with respect to (1) the page limit; (2) organization; (3) articulating claims specific to each named defendant; and (4) referencing the specific factual paragraphs that support his claims for relief.  Mem. Order 4–5, ECF No. 66.  Based on this, the Magistrate Judge found that Plaintiff's Particularized Complaint to once again be deficient.  *Id.*  And yet, despite the Court's prior warning that "failure to comply [with the requirements previously set forth] would result in dismissal of the action," Mem. Order 4, ECF No. 60, Magistrate Judge Colombell gave Plaintiff yet *another* opportunity to cure the noted deficiencies, and

---

[3] To the extent that Herrington needed three extra pages over the twenty-page limit, the Court notes that his "DAMAGES" section was unnecessary and repetitive of his earlier allegations and "PRAYER FOR RELIEF" section could have been more concisely stated.  Moreover, his Particularized Complaint is needlessly repetitive.

directed him to file a Second Particularized Complaint within thirty days. Mem. Order 5, ECF No. 66.

Nothing about the Magistrate Judge's conclusions were clearly erroneous or contrary to law, as Plaintiff's Particularized Complaint did not in fact comply with the Court's prior Memorandum Order, ECF No. 60. Moreover, the Magistrate Judge's decision to deny Plaintiff's Motion to Exceed 20 ages was likewise not clearly erroneous or contrary to law, as this Court had previously imposed the page limit to ensure that Plaintiff presented his claims in as clear a manner as possible, to properly provide each Defendant with fair notice of the facts and legal basis upon which his or her liability rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nothing more is needed in a complaint, and the Court does not find that this page limit deprives Plaintiff of any ability to state a claim. *E.g.*, *T.W. v. Hanover Cnty. Pub. Schs.*, 900 F. Supp. 2d 659, 665 (E.D. Va. 2012) ("A court must provide leeway to a *pro se* plaintiff, but this 'leeway must be tempered to require the Plaintiff to comply with . . . the pleading requirements of Rule 8.'" (quoting *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 615 (E.D. Va. 2010))). Accordingly, Plaintiff's objections will be overruled . . .

(ECF No. 71, at 5–6.) The Court granted Herrington a thirty (30) day extension in which to file a second particularized complaint that complied with the April 17, 2025 Memorandum Order. (ECF No. 71, at 7–8; ECF No. 72.)

On June 6, 2025, Herrington filed the Motion to Amend and his Second Particularized Complaint. Because the Court ordered Herrington to file a Second Particularized Complaint, the Motion to Amend (ECF No. 75) will be DENIED as unnecessary. However, as discussed below, Herrington once again failed to follow the specific directions of the Court for his Second Particularized Complaint with respect to Count I and II, and Counts III and IV. Thus, those counts do not survive the Court's screening obligations. Therefore, the Second Particularized Complaint will be DISMISSED.

## II.    STANDARD OF REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first

standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.    SUMMARY OF ALLEGATIONS

In his Second Particularized Complaint, which is once again rambling and repetitive, Herrington first contends that Defendants engaged in an unlawful "policy, custom, or practice," and a cover-up by refusing to prescribe him Paxlovid for a confirmed COVID-19 infection in July of 2022. (*See e.g.*, ECF No. 76, at 2–3.)[4] Herrington believed he was eligible for Paxlovid because "he was high risk for complications or death" for a variety of reasons. (*Id.* at 2.) Herrington had minor symptoms until the fifth day after he tested positive and then began to have "loss of taste and smell, severe chills then hot sweats, muscle aches, diarrhea, brain fog, hair loss, sleeping disorder, shortness of breath and emotional distress and mental anguish." (*Id.* at 3.) Herrington

---

[4] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, spelling and omits the emphasis and unnecessary parentheses in the parties' submissions. Herrington abbreviates his name in the Complaint to "DH." The Court substitutes Herrington's last name for those initials.

contends that he still suffers from lingering side-effects of COVID-19 that he believes could have been prevented if, and only if, he had received Paxlovid.  (*Id.* at 4.)  In March of 2023, well beyond when the receipt of Paxlovid would be of any benefit, Herrington was still inquiring about and requesting Paxlovid.  (*Id.* at 3.)  Defendant Powell responded to a grievance that Paxlovid was not available at the facility, and that Herrington was "living in fear from no access to Paxlovid if there is a new outbreak . . . ."  (*Id.*)  According to Herrington, he later had illnesses with COVID-19-like symptoms in October of 2023 and November of 2024.  (*Id.* at 5.)  Herrington complains that beginning in October 2023 through 2025, Defendants no longer tested for COVID-19 which created "new barriers" to him accessing Paxlovid.  (*Id.* at 4–6, 11.)

Herrington contends Defendants' actions amounted to violations of his Eighth Amendment right to be free from cruel and unusual punishment (Count I and II), violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the "Virginian's with Disabilities Act" (Count III), violation of his right to substantive due process under the Fourteenth Amendment (Count IV), violation of his right to be free from cruel and unusual punishment pursuant to Art. I, Section 9 of Virginia's Constitution (Count V), medical malpractice due to the mismanagement of COVID-19 infections (Count VI and VII), gross negligence (Count VIII), and intentional infliction of emotional distress and mental anguish (Count IX).

Herrington seeks damages and an injunction ordering Defendants to stock and provide him with Paxlovid and COVID-19 tests.  (*Id.* at 20.)

## IV.  ANALYSIS

### A.  Continued Failure to Comply with the Court's Orders (Count I and II)

Herrington has had four opportunities to file a complaint that clearly states his claims and complies with Federal Rule of Civil Procedure 8.  As outlined above, the Court has provided

Herrington with increasingly specific instructions on how to file a proper particularized complaint.

However, Herrington has continued to litigate his complaint in a manner that fails to follow the

Court's instructions. In the April 17, 2025 Memorandum Order, the Court specifically instructed

Herrington that he must do as follows:

> d.      In the third paragraph, Herrington must identify each
> federal or civil right violated.  The Court will only consider rights
> specifically identified here.  Under each section, Herrington must
> list each defendant purportedly liable under that legal theory and
> explain why he believes each defendant is liable to him.  This means
> Herrington must clearly state why he believes that each defendant
> violated his constitutional rights based on the facts he has provided.
> For example, if Herrington believes that defendants violated his
> Eighth Amendment rights for more than one reason, he must clearly
> label each claim separately (*i.e.*, "Claim One (a)" then, "Claim One
> (b)") and identify exactly which defendants were involved in that
> claim.  Such explanation should reference the specific numbered
> factual paragraphs in the body of the particularized complaint that
> support that assertion.  The Court will not parse through this section
> to find claims that are not clearly identified.

(ECF No. 66, at 5.)  Herrington's failure to follow this instruction is particularly egregious with

respect to Counts I and II.

In Count I, Herrington indicates that this claim is a "Violation of the Prohibition Against

Cruel and Unusual Punishment." (ECF No. 76, at 9.)  It is evident that Herrington believes that

he should have been prescribed Paxlovid several times between 2022 and 2025 but was not.

However, given the manner in which he pled his claim, it is unclear how each Defendant is liable

to him.  A further review of Count I reveals that there appear to be multiple unlabeled claims based

on different facts and theories under that header.  For example, first Herrington contends "Vital

Core is a defendant as a *Monell* claim." (*Id.* at 10.)  Second, Herrington contends that he informed

Defendants Triplett, Powell, Harris, Ricks, and Rolen "of his high-risk factors." (*Id.*)  Third,

Herrington adds "CMD Amonette spent COVID mitigation money frivolously." (*Id.*)  Fourth,

Herrington argues that "Vital Core, Harris, Powell, Rolen, Ricks, and Triplett were all put on notice of Herrington's serious medical needs because his medical conditions were on file, told verbally, on request forms, complaint forms, grievances and observed by them." (*Id.*)  Fifth, Herrington suggests that "Vital Core supervisors, Harris, Powell, and Triplett were all involved in the policies, customs, and practices crafting, implementing, and maintaining that they knew would cause injuries to COVID-infected who has high risk factors in violation of Herrington's constitutional rights." (*Id.*)  Herrington presumably suggests that these same Defendants "made the practices of not informing the doctor of the serious medical condition and attempts to trick inmates like Herrington into waiting until was too late to get Paxlovid." (*Id.*)  Sixth, Herrington suggests that "Defendants Ricks and Rolen with CMD Targonksi have also made, implemented, and maintained practices that prevent proper treatment of Paxlovid for high-risk inmates like Herrington" such as "create[ing] new barriers, i.e. refusing to give COVID test when Herrington complained of being infected with COVID-19, not referring Herrington to the doctor and hiding these facts by not writing down the events of sick call and sending Herrington away with no treatment." (*Id.* at 10–11.)[5]  Much of the remainder of Count I just complains of "defendants" generally and does not state a claim against any named individual.

The facts Herrington cites to support Count I arise from several distinct dates, rely on different factual bases and legal theories, and are certainly not all one claim.  The Court specifically instructed Herrington that if he "believes that defendants violated his Eighth

---

[5] Plaintiff contends that, at some point, Defendants Vital Core, Harris, Powell, Triplett, and Amonette no longer worked at DCC, and Defendants Ricks, Rolen, and Targonski "took over" and "kep[t] barriers to Paxlovid in place." (ECF No. 76, at 5–6.)  Herrington does not identify when this occurred.  Herrington attempts to join all of the Defendants under a theory of "ongoing COVID mismanagement." (*Id.* at 6.)  However, Defendants clearly were involved in Herrington's medical care at different times.  Herrington fails to set forth specific claims based on each individual's involvement, making it difficult to discern why they are liable in Count I or II.

Amendment rights for more than one reason, he must clearly label each claim separately (*i.e.*, "Claim One (a)" then, "Claim One (b)") and identify exactly which defendants were involved in that claim." (ECF No. 66, at 5.) The Court further warned that it would "not parse through this section to find claims that are not clearly identified." (*Id.*) The Court set forth this requirement precisely to avoid the form of pleading Herrington presents in his Second Particularized Complaint. Unfortunately, Herrington did not heed the Court's instructions, and Count I is comprised of what appears to be disparate claims for relief stemming from different facts and legal theories against different Defendants. Neither the Court nor Defendants should be required to address Herrington's claims when he himself failed to adequately present them in his complaint after so many opportunities to do so.

Count II suffers from the same problem. Herrington contends that Count II is "Ongoing Inadequate/Improper Treatment/Conditions" in violation of the Eighth Amendment. (ECF No. 76, at 12.) Count II appears to be mostly repetitive of Count I. Herrington indicates that "Defendants Vital Core, Dr. Harris, Powell, Triplett, and CMD Amonette continued to leave in place barriers to Paxlovid after Herrington's infection on 7-18-22, . . . by placi[ng] new barriers to Paxlovid treatment by denying him COVID tests . . . [t]his caused Herrington to have pain and suffering from new COVID-19 infection without treatment for the pain and suffering complained of." (*Id.* (citation omitted).) Herrington contends that "Defendant Ricks, Rolen, and Targonski continued policies, practices, and customs that kept and made new barriers to Paxlovid treatment by denying test[s], and not recording complaints of COVID-19 and sending Herrington away with no treatment." (*Id.*) Herrington suggests that "the situation is ongoing from 7-18-22 [until] now" and "Defendants have not done anything to compensate Herrington for his injuries or stop the current practices that violate the constitutional rights of Herrington." (*Id.*)

Although Herrington labeled this claim as a lack of ongoing treatment for COVID-19, he then claims that he "has not been allowed to go to work release despite his injuries and being a victim of unwanted sexual incidents when policy mandates the transfer." (*Id.*) Finally, Herrington suggests that "[t]ransfer-to-work release would moot the dangers Herrington is living in at Deerfield and despite his request and non-violent, non-sex offense, 1st offense, short time status, he has been told they are not sending Herrington to work release without an order from VADOC." (*Id.*) It is not clear which Defendants Herrington believes are liable for this aspect of Count II.

Nevertheless, Herrington clearly believes that Defendants have violated his Eighth Amendment rights based on different facts and for different reasons, but failed to label that there was more than one claim for relief. This fails to comport with the Court's specific instructions in the April 17, 2025 Memorandum Order. Herrington has had several opportunities to file a clear and succinct complaint that complies with the Court's directives and Rule 8. Moreover, the Court warned Herrington twice that the failure to comply with the Court's specific directions would result in dismissal of the case. (*See* ECF No. 60, at 2; ECF No. 66, at 7.) Although Herrington's *pro se* status makes him "entitled to some deference," it does not relieve him of his duty to abide by the rules and orders of this Court. *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989) (citation omitted). For that reason, Count I and II are DISMISSED without prejudice.

### B.    The Court's Screening Obligations Under § 1915

#### 1.    The ADA/VRPDA or Rehabilitation Act Claim (Count III)

Herrington contends that Count III is a claim for "Violations of Americans with Disabilities Act Title II, 42 USCS § 12131, et. seq., [("ADA")] and § 504 of the Rehabilitation Act of 1973 [("Rehabiliation Act")], and the Virginian's with Disabilities Act (COV § 51.5–1 et. seq.)

[("VRPDA")]."[6]  (ECF No. 76, at 12.)  Herrington argues that "Defendants CMD Dr. Amonette, CMD Dr. Targonksi, Vital Core, Dr, Harris, Ricks, Rolen, Powell, and Triplett violated Herrington's 5th and 14th amendment U.S. constitutional rights by violating" the ADA, Rehabilitation Act, and VRPDA, "because of the mismanagement of COVID-19 practices when all Defendants made/maintained policy, customs, and practices that discriminated against Herrington by denying him access to medical treatment/program for COVID-19, i.e., Paxlovid or a COVID test."  (*Id.*)  Herrington contends that he "was disabled when he caught COVID with cardiovascular disease" and that "long COVID has exacerbated his disability" and created "new disabilities."  (*Id.* at 13.)

Specific to Defendants Triplett and Powell, Herrington claims that "in July of 2022 [they] had a conversation where Triplett then Hagen made a comment about Herrington wanting Paxlovid and chuckled about it to Defendant Powell.  Powell stated only inmates with a respiratory disability can get Paxlovid, he does not have a respiratory disability."  (*Id.* at 14.)  Herrington suggests this "was discrimination because the CDC already stated my disability were high risk factors that mandated Paxlovid."  (*Id.*)  Herrington contends that Defendants Vital Core, Dr. Harris, Powell, and Triplett "all had knowledge of the policy/customs and practice of denying an avenue to get Paxlovid, if your disability was not a respiratory one . . . that [went against] CDC doctors' mandates to give infected people like Herrington Paxlovid due to their high risk factors."  (*Id.*)  Without identifying a specific Defendant, Herrington next contends that "the customs/policies that allowed nurses to give false information on request forms and not alert a doctor of serious medical conditions to deny Paxlovid was part of the discrimination, i.e., Herrington did not have the type of disability that would get treatment other disabled people would get."  (*Id.*)  As discussed below,

---

[6] The Virginia statute is entitled the Rights of Persons with Disabilities Act and is referred to here as the "VRPDA."  Va. Code. Ann. 51.5-1, *et seq.* (West 2025).

Herrington's allegations fail to state a claim for relief under the ADA/VRPDA and the Rehabilitation Act.[7]

Title II of the ADA provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (emphasis added) (quoting 42 U.S.C. § 12132). Similarly, section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." Because the language and purpose of Title II of the ADA and § 504 of the Rehabilitation Act are substantially the same, the same analysis applies to claims brought under either statute. *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (citation omitted).

To state a claim under either statute, a plaintiff must allege facts plausibly asserting that:

> (1) [he or] she has a disability, (2) [he or] she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) [he or] she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his or] her disability.

*Constantine*, 411 F.3d at 498 (citations omitted).[8] "A plaintiff is 'qualified' if [he or] she is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or

---

[7] As a preliminary matter, Herrington brings his claims against Defendants in their official and individual capacities. "[N]either Title II or the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S. U.N. Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d. Cir. 2001); *see Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir. 2014) (citations omitted). Herrington's individual capacity claims against Defendants are improper and will be DISMISSED.

[8] The ADA's Title II and the Rehabilitation Act "differ only with respect to the third element, causation." *Wicomico Nursing Home*, 910 F.3d at 750 (quoting *Halpern v. Wake Forest*

practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'"  *Id.* (quoting 42 U.S.C. § 12131(2)).

Herrington alleges that the failure to provide him with adequate medical care by not prescribing him Paxlovid violated the ADA/VRPDA and Rehabilitation Act.  However, courts in the Fourth Circuit and other circuit courts have held that an inmate's medical treatment, or lack of treatment, fails to provide a basis upon which to impose liability under the ADA or the Rehabilitation Act.  *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (explaining that "purely medical decisions . . . do not ordinarily fall within the scope of the ADA or Rehabilitation Act"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("conclude[ing] a lawsuit under the Rehab Act or [ADA] cannot be based on medical treatment decisions" (citations omitted)); *Spencer v. Easter*, 109 Fed. Appx. 571, 573 (4th Cir. 2004) ("Because there is no evidence in the record to suggest that any failure by the Defendants to obtain Spencer's medication in a timely manner stemmed from any discriminatory intent due to any alleged disability, we find that Spencer fails to establish a prima facie claim under the ADA.") (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996))); *Davis v. Keller*, No. 7:23-cv-0593, 2024 WL 4326544, at *8 (W.D. Va. Sept. 27, 2024) (collecting cases from the Fourth Circuit holding that "the ADA cannot be used to assert a claim of inadequate medical care").  Herrington essentially argues that he should have received Paxlovid but was not provided with the drug. This

---

*Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012)). "To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." *Id.* (quoting *Halpern*, 669 F.3d at 461–62). This distinction is of no import in Herrington's case because he fails to plausibly allege that his disability played any role in his lack of receipt of Paxlovid or COVID-19 tests.

amounts to a claim that he was denied adequate medical care, but not a claim of discrimination. *See Davis*, 2024 WL 4326544, at *8 (citation omitted). Any claim that he was not prescribed Paxlovid is a claim of denial of adequate medical care and for that reason, may be dismissed for failure to state a claim.

Even if Herrington alleged a different type of claim in Count III than a denial of adequate medical care, Herrington has not alleged facts suggesting that he was subject to discrimination on the basis of his disability. Herrington argues that he was disabled because he suffered from cardiovascular disease. The Court assumes solely for the purposes of this opinion that Herrington's cardiovascular disease could amount to a disability. Herrington takes issue with the fact that Paxlovid was only administered to those who had respiratory disease. Herrington believes that this was discrimination against him because he did not have a respiratory disease. Simply put, Herrington fails to allege facts that would plausibly suggest that he was denied Paxlovid because of *his* disability of cardiovascular disease. Instead, according to Herrington, he was not prescribed Paxlovid because he did not have a respiratory disease. Herrington was not denied a COVID-19 test because of his cardiovascular disease. Rather, according to Herrington, he was not tested in error in October 2023 (ECF No. 76, at 5), and by 2024 the institution had stopped testing for COVID-19 because it was treated like a cold. (*Id.* at 6.) Thus, Herrington has failed to allege facts indicating that, due to his disability of cardiovascular disease, he was deprived of benefits for which he was otherwise qualified. *See Constantine*, 411 F.3d at 498; *Miller v. Hinton*, 288 F. App'x 901, 903 (4th Cir. 2008) (holding that inmate "claiming that the institution denied him proper medical care by denying access to colostomy bags and catheters, . . . failed to show he was treated in this manner because of his disability," and thus failed to show discrimination). In sum, Herrington fails to allege facts that would plausibly suggest that he was discriminated against on

the basis of his allegfed disability of cardiovascular disease.  Accordingly, Claim III will be DISMISSED or failure to state a claim and as frivolous.

### 2.    Due Process Claim (Count IV)

Herrington identifies Count IV, as a "substantive due process" claim.  (ECF No. 76, at 15.) Herrington contends that Defendants' "refusal to have customs/policies and practices to treat Herrington's COVID-19 infection . . . violate[d] Herrington's substantive due process right to bodily integrity by making his cardiovascular disease worse and causing new disabilities . . . ." (ECF No. 76, at 15.)  The Court construes Herrington's claim to derive from the Fourteenth Amendment Due Process Clause.[9]

Herrington suggests he had a "fundamental due process right against state actor conduct that discriminates and deprives him of bodily integrity" and that this conduct was the Defendants' refusal to provide him with what he deems appropriate care for a known COVID-19 infection and other symptoms that Herrington believes resulted from COVID-19.  (ECF No. 76, at 15–16.) Typically, such conduct would be addressed as an Eighth Amendment claim because Herrington is a convicted prisoner.[10]  The Court dismissed Herrington's Eighth Amendment claims, but his due process claim remains.

Herrington's statement of facts clearly indicates that he received treatment for a COVID-19 infection, just not the specific treatment he desired.  Although he wanted Paxlovid, according

---

[9] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

[10] Ordinarily,"[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Claims involving the denial of adequate medical care are clearly covered by other enumerated amendments, and in this instance, the Eighth Amendment.  *See City of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998).

to Herrington, he was not provided with the drug because the drug was only being administered to those individuals with respiratory diseases. Herrington does not enjoy a substantive due process right to the medical treatment of his choosing. *Cf. Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted) (explaining that prisoners lack entitlement to "unqualified access to health care" and to the medical treatment of their choosing); *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) (noting that the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable"). Moreover, as explained previously in conjunction with his Eighth Amendment claims, Herrington has failed to plead facts to support this claim in a coherent manner, and what he has alleged fails to state a claim for relief. In sum, Herrington fails to plausibly allege that Defendants violated his Fourteenth Amendment due process rights. Accordingly, Claim IV will be DISMISSED without prejudice.

### 3.    Remaining State Law Claims

In Counts V, VI, VII, VIII, and IX, Herrington alleges various Virginia state law claims. "The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995). "Although a federal court has discretion to assert pendent jurisdiction over state claims even when no federal claims remain certainly if the federal claims are dismissed before trial . . . the state claims should be dismissed without prejudice." *Alexandria Resident Council, Inc. v. Alexandria Redevelopment & Hous. Auth.*, 11 F. App'x 283, 287 (4th Cir. 2001) (citations, alterations, internal quotation marks omitted). The Court declines to exercise supplemental jurisdiction over Herrington's state law claims. Accordingly, Counts V, VI, VII, VIII, and IX will be DISMISSED without prejudice.

## V.    CONCLUSION

Accordingly, Counts I, II, IV, V, VI, VII, VII, and IX will be DISMISSED without prejudice.  Counts III is DISMISSED.  The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Roderick C. Young
United States District Judge

Date:    September 2, 2025
Richmond, Virginia